# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRIAN SPENCE<br>1903 Layton Street<br>Crofton, Maryland 21114<br><br>*Plaintiff*,<br><br>v.<br><br>KEVIN K. MCALEENAN, ACTING SECRETARY,<br>DEPARTMENT OF HOMELAND SECURITY<br>3801 Nebraska Ave NW<br>Washington, DC 20016<br><br>*Defendant*,<br><br>Serve:<br><br>UNITED STATES ATTORNEY'S OFFICE<br>FOR THE DISTRICT OF MARYLAND<br>Attn: Civil Process Clerk<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201<br>*-Via Certified Mail*<br><br>UNITED STATES ATTORNEY GENERAL<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br>*-Via Certified Mail*<br><br>KEVIN K. MCALEENAN,<br>ACTING SECRETARY,<br>DEPARTMENT OF HOMELAND SECURITY<br>3801 Nebraska Ave NW<br>Washington, DC 20016<br>*-Via Certified Mail* | Case No. _____ |

**CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY**

1.	Plaintiff Brian Spence brings this suit against Kevin McAleenan, United States Acting Secretary of the Department of Homeland Security ("DHS"), who oversees the United States Secret Service ("USSS"). This civil action is brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; 29 C.F.R. § 1614.201 and the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 790 *et seq.*; 29 C.F.R. § 1614.203.

## JURISDICTION AND VENUE

2.	This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 790 *et seq.*

3.	On March 9, 2019, Spence filed a formal complaint of discrimination that raised the claims described herein with the DHS Office of Civil Rights and Civil Liberties. On July 16, 2019, the DHS Office of Civil Rights and Civil Liberties issued a Final Agency Decision on Spence's complaint.

4.	Pursuant to 29 C.F.R. § 1614.407(c), 42 U.S.C. § 2000(e)-16(c), and 29 U.S.C. § 633a(b)-(c), this Court has jurisdiction over the matters described herein as Spence exhausted his administrative remedies.

5.	This court has personal jurisdiction over the Defendant because the United States Secret Service Office operates and maintains its headquarter in Washington, D.C and because its Human Resources Office of Health and Human Safety is also located in Washington, D.C. Additionally, USSS's Physical Security Specialist position is based out of Washington, D.C. Thus, Defendant has substantial contacts with and conducts business in the District of Columbia

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because substantial actions that form the basis of this Complaint occurred within the judicial district.

## PARTIES

7. Plaintiff Brian Spence is a forty-eight (48) year old male and domiciliary of the State of Maryland.

8. Defendant USSS, an agency of the U.S. Department of Homeland Security, operates and maintains two field offices in the state of Maryland including a field office in Laurel, Maryland, and another field office in Baltimore, Maryland.

9. USSS operates and maintains its headquarters at 950 H Street, N.W., Washington D.C. 20223.  USSS's Human Resources Office of Health and Safety is also located at 950 H Street, N.W., Washington, D.C. 20223.

## FACTUAL ALLEGATIONS

10. Spence served in the Army from 1988 to 1994 and the National Guard from 1995 to 2012.

11. Spence is a disabled veteran with veteran's preference (30 points) for federal hiring.

12. Spence suffered mild hearing loss after he returned from military duty in Iraq in 2010.

13. Spence's audiologist confirmed Spence's hearing loss in 2017 and averred this his hearing loss is consistent with being over the age of forty.

14. Specifically, Spence has difficulty hearing high frequency decibels, which is a consistent symptom of persons over the age of forty and persons who are military veterans.

15. Spence does not use or need to use a hearing aid and has never required a reasonable accommodation related to his hearing loss.

16. In November 2015, the United States Secret Service ("USSS") hired Spence as a GS-13 Emergency Services Specialist at the Rowley Training Center/Emergency Services Office in Laurel, MD 21114.

17. In June 2017, Physical Security Specialist Brent Harris ("Harris") asked Spence if he was interested in moving to the Technical Security Division within the Office of Technical Development and Mission Support, located in Washington, D.C., as a Physical Security Specialist.

18. Spence provided his résumé to Harris and in July 2017, Spence attended a three-person panel interview for the Physical Security Specialist position.

19. On July 8, 2017, Human Resources Specialist Juanita Burrell ("Burrell") notified Spence that he was selected for the Physical Security Specialist position.

20. On July 8, 2017, Spence accepted a conditional offer of employment based upon successfully completing polygraph and physical examination.

21. In or around September 2017, Spence passed the polygraph testing.

22. After completing the polygraph and physical exam, Spence received a letter from USSS on January 10, 2018, stating he was not selected for the Physical Security Specialist position because Spence was "no longer among the best qualified."

23. The letter also asserted that "the selecting official selected a better qualified applicant."

24. The letter did not provide any rationale or explanation as to why or how Spence was no longer qualified for the Physical Security Specialist position.

25. Despite the language of the January 10, 2018, letter, USSS did not, in fact, select anyone for the Physical Security Specialist position.

26. There are currently approximately thirty (30) open Physical Security Specialist positions in the Technical Security Division within the Office of Technical Development and Mission Support.

27. Spence first contacted the USSS EEO office on or about February 13, 2018, after receiving USSS's January 10, 2018, notice of disqualification.

28. The USSS EEO office Kyong Kim informed Spence that he could not file a complaint because he had a received only a general disqualification letter and, as a result, needed to confirm USSS's specific reason for disqualifying him from starting as a Physical Security Specialist.

29. Spence asked Special Agent in Charge Kim Cheatle ("Cheatle") for help in inquiring as to the reason why Spence was not qualified for the position.

30. However, Cheatle was not able to learn USSS's reasons for Spence's disqualification.

31. Next, in or around the fall of 2018, Spence contacted Ombudsman Paul Tyron ("Tyron") for help in inquiring as the specific reason why Spence was disqualified.

32. While Tyron was not able to learn USSS's specific reason for Spence's disqualification, Tyron was able to confirm on December 28, 2017 that Spence was medically disqualified

33. After Spence learned from Tyron that he had been medically disqualified, Spence reinitiated contact with the USSS EEO office on February 5, 2019.

34. Spence filed his formal EEO complaint on March 8, 2019.

35. On May 3, 2019, Spence received a letter from USSS Donna Burgess, Talent and Employee Acquisition Management Division, informing him, for the first time, of the Agency's specific reason for Spence's disqualification for the Physical Security Specialist position.

36. In this May 3, 2019, letter, for the first time since the USSS's January 10, 2018, disqualification notice, USSS asserted that Spence's hearing loss purportedly rendered him medically ineligible for the position of Physical Security Specialist.

37. Also, according to the May 3, 2019, letter, USSS defended that it was "because of an administrative oversight" that it did not notify Spence of the specific reason for his removal from the Physical Security Specialist hiring process.

38. According to the May 3, 2019, letter, Spence was disqualified for the Physical Security Specialist position because his hearing threshold was at approximately 35 decibels at 2000 Hertz, which was greater than the maximum allowable hearing loss of 25 decibels or less at 500, 1000, and 2000 Hertz.

39. The announcement for the Physical Security Specialist position did not include any occupational requirements for any specific hearing acuity.

40. The Occupational Series for the Technical Security Investigator/Physical Security Specialist position Spence applied for in July 2017 was either 0080 ("Security Administration") or 1801 ("General Inspection, Investigation, Enforcement, and Compliance").

41. The Office of Personnel Management ("OPM") guidelines for Occupational Series 0080 and 1801 do not include any occupational requirements, such as a specific requirement for any specific hearing acuity.

42. The most similar Occupational Series with a hearing acuity requirement to the position Spence applied for was 1811, or the "Criminal Investigation."

43. The OPM guidelines for Occupational Series 1811 include, in part, "Hearing loss, as measured by an audiometer, must not exceed 35 decibels at 1000, 2000, and 3000 Hz levels."

44. Even assuming the occupational requirements of Occupational Series 1811 were applicable to the Physical Security Specialist position Spence applied for, he met those requirements.

45. Spence is aware of at least one Secret Service Special Agents with a cochlear hearing implant.

46. Spence is also aware of several other Secret Service Special Agents who use hearing aids.

47. Approximately over the past two years, Spence spoke with Jon Tani, Brent Harris, and David Cohen within the Technical Security Division within the Office of Technical Development and Mission Support, who confirmed Spence's hearing was perfectly adequate to succeed in the Physical Security Specialist position.

48. As a result of USSS's illegal discrimination, Spence has suffered economic damages and will continue to be significantly harmed in the future.

**COUNT I**
**Age Discrimination in Violation of**
**Age Discrimination in Employment Act**
**29 U.S.C. § 621** *et seq.*

49. Spence incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

50. Spence is a "person" and an "employee" as the terms are defined at 29 U.S.C. § 630(a) and (f) and 29 U.S.C. § 633a.

51. Spence is over the age of forty (40).

52. DHS and USSS are "federal agencies" as the term is used in 29 U.S.C. § 633a.

53. DHS and USSS are "employers" as defined by 29 U.S.C. § 630(f).

54. DHS discriminated against Spence when it denied him the position of Physical Security Specialist because of his hearing loss which is consistent with individuals over the age of forty (40).

55. DHS's hearing requirements for Physical Security Specialists, if true, do not relate to an essential job function of Physical Security Specialists.

56. DHS's hearing requirements for Physical Security Specialists, if true, is not a proper qualification standard for success as a Physical Security Specialist.

57. DHS's reasons for denying Spence the Physical Security Specialist position are pretextual for its unlawful age discrimination.

58. Spence has exhausted his administrative remedies.

59. Spence has sustained substantial monetary and non-monetary damages as the result of DHS's conduct.

### COUNT II
### Disparate Impact in Violation of
### Age Discrimination in Employment Act
### 29 U.S.C. § 621 *et seq.*

60. Spence incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

61. DHS and USSS are "federal agencies" as the term is used in 29 U.S.C. § 633a.

62. DHS and USSS are "employers" as defined by 29 U.S.C. § 630(f).

63. DHS discriminated against Spence when it denied him the position of Physical Security Specialist because of his hearing loss which is consistent with individuals over the age

of forty (40).

64. DHS's hearing requirements for Physical Security Specialists, if true, disparately impact employees and applicants over the age of forty (40).

65. DHS's hearing requirements for Physical Security Specialists, if true, do not relate to an essential job function of Physical Security Specialists.

66. DHS's hearing requirements for Physical Security Specialists, if true, is not a proper qualification standard for success as a Physical Security Specialist.

67. DHS's reasons for denying Spence the Physical Security Specialist position are pretextual for its unlawful age discrimination.

68. Spence has exhausted his administrative remedies.

69. Spence has sustained substantial monetary and non-monetary damages as the result of DHS's conduct.

**COUNT III**
**Discrimination in Violation of**
**The Rehabilitation Act**
**29 U.S.C. § 791 *et seq.***

70. Spence incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

71. DHS is an executive agency as contemplated by 29 U.S.C. § 794(a).

72. Spence is an employee of the Agency.

73. Spence has disability as defined by 29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102(1)(c) and 12102(3) because Spence has been subjected to an unlawful agency action because of his actual or perceived hearing loss.

74. DHS's hearing requirements for Physical Security Specialists, if true, do not relate to an essential job function of Physical Security Specialists.

75. DHS's hearing requirements for Physical Security Specialists, if true, is not a proper qualification standard for success as a Physical Security Specialist.

76. DHS's reasons for denying Spence the Physical Security Specialist position are pretextual for its unlawful disability discrimination.

77. Spence has exhausted his administrative remedies.

78. Spence has sustained substantial monetary and non-monetary damages as the result of DHS's conduct.

## COUNT IV
### Disparate Impact in Violation of
### The Rehabilitation Act
### 29 U.S.C. § 791 *et seq.*

79. Spence incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

80. DHS is an executive agency as contemplated by 29 U.S.C. § 794(a).

81. DHS's hearing requirements for Physical Security Specialists, if true, disparately impact employees and applicants with disabilities.

82. DHS's hearing requirements for Physical Security Specialists, if true, do not relate to an essential job function of Physical Security Specialists.

83. DHS's hearing requirements for Physical Security Specialists, if true, is not a proper qualification standard for success as a Physical Security Specialist.

84. DHS's reasons for denying Spence the Physical Security Specialist position are pretextual for its unlawful disability discrimination.

85. Spence has exhausted his administrative remedies.

86. Spence has sustained substantial monetary and non-monetary damages as the result of DHS's conduct.

## PRAYER FOR RELIEF

Based on the foregoing, Spence respectfully requests that the Court enter judgment in his favor and award him the following relief:

a. Reinstatement or, in lieu thereof, full front pay;

b. Economic damages for lost compensation and damages to Spence's career;

c. Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damage;

d. Pre-judgment interest;

e. Liquidated damages;

f. Reasonable costs and experts' and attorneys' fees; and

g. Any other such relief that the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Spence requests a trial by jury for any and all issues proper to be so tried.

Dated: September 27, 2019              Respectfully submitted,

/s/ R. Scott Oswald
R. Scott Oswald
Michael L. Vogelsang, Jr.
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2818
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
mvogelsang@employmentlawgroup.com
*Counsel for Plaintiff*

11