**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRIAN SPENCE,<br>*Plaintiff*,<br>v.<br>CHAD WOLF,<br>*Defendant*. | Civil Action No. 19-2919 (TJK) |

**MEMORANDUM OPINION**

Brian Spence is a forty-eight-year-old disabled veteran with mild hearing loss. He works as an Emergency Services Specialist for the United States Secret Service and in July 2017, he interviewed for a position as a Physical Security Specialist. After he was not selected for the position, Spence contacted the Secret Service's Equal Employment Opportunity Office to raise his concern that this decision was discriminatory. Spence ultimately filed a formal EEO complaint, which was dismissed for failure to comply with regulatory deadlines. Spence now brings four claims, alleging disparate impact and disparate treatment under both the Age Discrimination and Employment Act and the Rehabilitation Act of 1973. Defendant has moved to dismiss all claims for failure to administratively exhaust and for failure to state a claim upon which relief can be granted. For the reasons explained below, the Court will grant Defendant's motion and dismiss the case.

## I. Background

In July 2017, Spence interviewed for a Physical Security Specialist position within the United States Secret Service ("Secret Service"). ECF No. 1 ("Compl.") ¶¶ 17–18. Shortly after the interview, he accepted a conditional offer of employment contingent on successful

completion of a polygraph and physical examination. *Id.* ¶¶ 19–20. On January 10, 2018, after completing the polygraph and physical examination, Spence received a letter stating that he was not selected for the position. *Id.* ¶¶ 21–23. The letter said that Spence was "no longer among the best qualified" and that a "better qualified applicant" had been selected. *Id.* It contained no reference to Spence's physical examination or potential medical disqualification. *Id.* ¶ 24.

On February 13, 2018, Spence emailed the Secret Service Equal Employment Opportunity (EEO) Office about the disqualification notice, expressing his view that he had been denied the job because of his disability. *Id.* ¶ 27; ECF No. 12 ("Opp'n") at 8.[1] EEO Assistant Kyong Kim connected Spence to EEO Disability Program Manager David Bruce to discuss his email. Opp'n at 8. After Bruce spoke with Spence, he referred him back to Kim. ECF No. 10-2 ("Def. Ex.") at 43. On February 22, Kim emailed Spence to describe the EEO complaint process—including the requirement that it start within 45 calendar days—and reviewed the process with Spence by phone. Opp'n at 8. Spence alleges that Kim told him on the phone that he could not file an EEO complaint until he received notice of the specific basis for his disqualification. Compl. ¶ 28; Opp'n at 8.

Spence then contacted Special Agent in Charge Kim Cheatle to determine this reason. Compl. ¶ 29. According to Spence, Cheatle then contacted the Health and Safety Unit, which informed Cheatle that the only way to obtain the information was to file a FOIA request, and Spence did so. Opp'n at 9. On February 26, 2018, Spence emailed Kim to inform him of his FOIA request. *Id.* Kim emailed Spence the next day to warn him that failure to start the pre-complaint process within the 45-day period could lead to dismissal of any EEO complaint for

[1] The citations in this Memorandum Opinion and Order adopt the pagination in the ECF-generated headers of the parties' filings.

untimeliness and advised Spence to schedule an intake interview if he wished to pursue an EEO complaint. Def. Ex. at 7. Spence did not reinitiate contact with the Secret Service EEO Office again until nearly a year after his initial outreach. Compl. ¶ 33.

Meanwhile, Spence continued to pursue his FOIA request and also reached out to various officials, including Ombudsman Paul Tyron, to learn the specific reason for his disqualification. Compl. ¶ 31; Opp'n at 10. In December 2018, Tyron received confirmation that Spence had been medically disqualified and informed Spence of that on January 25, 2019. Compl. ¶ 32; Opp'n at 10. Spence then contacted the Secret Service EEO office to launch the pre-complaint process, making initial contact on February 1, 2019 and completing an intake interview four days later. Compl. ¶ 33; Opp'n at 10. On March 9, 2019, Spence filed a formal complaint alleging discrimination based on his age and disability. Compl. ¶ 34; Opp'n at 10; Def. Ex. at 26–27.[2] In May 2019, Secret Service sent a letter to Spence confirming that his hearing loss rendered him ineligible for the Physical Security Specialist position and that notification of the specific reason for his disqualification was delayed "because of an administrative oversight." Compl. ¶¶ 36–37.

In July 2019, the Department of Homeland Security ("DHS") Office for Civil Rights and Civil Liberties ("CRCL") dismissed Spence's EEO complaint for violating the time limits for beginning the pre-complaint process or to provide "adequate justification which would warrant the waiver, estoppel, or tolling of the time limit." Def. Ex. at 5–9. DHS CRCL notified Spence

[2] The Complaint alleges that Spence filed his formal EEO complaint on March 8, 2019. Compl. ¶ 34. But March 9, 2019 is the date listed on the EEO complaint, Def. Ex. at 26, and Spence later clarified he filed on March 9, 2019, Opp'n at 10. If Spence was not on notice until January 25, 2019, as he argues, his 45-day window elapsed on March 10, 2019, so both filing dates are within the limit and this distinction makes no difference.

of his right to file a civil action with the appropriate United States District Court within 90 days of the final administrative decision. *Id.* at 10–11.

On September 27, 2019, Spence filed this action under the Age Discrimination and Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 790 *et seq.* Spence alleges disparate treatment under the ADEA, Compl. ¶¶ 49–59 ("Count I"), and Rehabilitation Act, *id.* ¶¶ 70–78 ("Count III"), and disparate impact under the ADEA, *id.* ¶¶ 60–69 ("Count II") and Rehabilitation Act, *id.* ¶¶ 79–86 ("Count IV").[3] Before the Court is Defendant's motion to dismiss Spence's complaint under Rules 12(b)(1) for failure to administratively exhaust and under Rule 12(b)(6) for failure to state a claim. ECF No. 10 ("Def. MTD").

## II. Legal Standards

To survive a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a plaintiff bears the burden of showing that the court has such jurisdiction. *Doak v. Johnson*, 19 F. Supp. 3d 259, 267 (D.D.C. 2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "When reviewing a motion to dismiss pursuant to Rule 12(b)(1), the Court must accept as true all of the factual allegations contained in the complaint." *Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 86 (D.D.C. 2010). Still, the Court must give a plaintiff's factual allegations closer scrutiny than it would under a 12(b)(6) motion, to ensure it is acting within the scope of its jurisdiction. *Doak*, 19 F. Supp. 3d at 267. The Court is thus "not limited to the allegations set forth in the complaint, but 'may consider materials outside [of] the pleadings.'"

[3] Defendant Chad Wolf, who assumed office as Acting Secretary of Homeland Security in November 2019, is automatically substituted for Kevin K. McAleenan under Federal Rule of Civil Procedure 25(d).

*Ragsdale v. Holder*, 668 F. Supp. 2d 7, 14 (D.D.C. 2009) (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A court must construe the complaint in the light most favorable to the plaintiff, but the plaintiff "must furnish 'more than labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Tyler v. D.C. Hous. Auth.*, 113 F. Supp. 3d 88, 90 (D.D.C. 2015) (quoting *Twombly*, 550 U.S. at 555).

When reviewing a 12(b)(6) motion, "a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 117 (D.D.C. 2015).  Generally, if a court relies on matters outside the pleadings, then a motion to dismiss must be treated as one for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d). "However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F.App'x 4 (D.C. Cir. 2002). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  "Moreover, a document need not be mentioned by name to be considered referred to or incorporated by reference into the

complaint." *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 218 (D.D.C. 2012) (quotation marks omitted).

A court may consider a plaintiff's EEO complaint and notice of charge without converting a motion to dismiss into a motion for summary judgment "because such records are public documents of which a court may take judicial notice." *Sanders v. Kerry*, 180 F. Supp. 3d 35, 41 (D.D.C. 2016) (cleaned up). A court may also rely on final agency decisions, especially to the extent they provide "background information such as dates of filings." *Vasser v. McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016); *see also Williams v. Chu*, 641 F. Supp. 2d 31, 34–35 (D.D.C. 2009) (relying on date EEOC denied appeal and date the plaintiff received notice of denial to decide on merits).

## III. Analysis

### A. Rehabilitation Act Claims

Spence asserts two claims under the Rehabilitation Act: that he was disparately treated as a result of his disability—hearing loss—and that the hearing requirements for the Physical Security Specialist position disparately impact the disabled. Defendant argues that both claims should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction because Spence failed to exhaust available administrative remedies.

The Rehabilitation Act allows a complainant to sue only after the agency has reached a final disposition or failed to act on his complaint. *See* 29 U.S.C. § 794a(a)(1). As a result, it is clear that federal courts lack jurisdiction over alleged discriminatory conduct when a plaintiff has not filed a complaint. *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006). That said, the D.C. Circuit held in *Doak v. Johnson* that the exhaustion requirement does not attach "irremediable jurisdictional consequence to every procedural misstep." 798 F.3d 1096, 1104 (D.C. Cir. 2015). *Doak* distinguished between the Rehabilitation Act's statutory requirements and those non-

statutory requirements created by the EEOC. *Id.* The court held that while a failure to comply with the requirements of the informal process created by EEOC regulation might prevent a party from exhausting her claim administratively, that failure should not prevent her from suing if she is "aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint." 29 U.S.C. § 794a(a)(1).

Thus, to decide Defendant's motion to dismiss, the Court must determine whether Spence's claims are administratively exhausted, whether any such failure is jurisdictional, and if not, whether that failure should be excused on equitable grounds.

**1. Count III (Disparate Treatment)**

Spence alleges that the Secret Service unlawfully discriminated against him because of his disability when it did not select him for the Physical Security Specialist role. In support of its motion to dismiss, Defendant argues that Spence failed to start the complaint process within 45 days of the date of the discrimination and that as a result, this court lacks subject-matter jurisdiction.

The relevant regulations require that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). To satisfy the contact requirement, "an employee who believes that she has been the subject of discrimination must timely (1) contact an agency official 'logically connected' with the EEO process (not necessarily a Counselor) and (2) demonstrate an intent to begin the EEO process." *Boone v. Clinton*, 675 F. Supp. 2d 137, 143 (D.D.C. 2009).

Spence's claims stem from the non-selection notice he received on January 10, 2018, so the 45-day window for beginning the pre-complaint process closed on February 24, 2018. Spence contacted the Secret Service EEO Office during this period, but regrettably for him, he

did not demonstrate the intent to begin the pre-complaint process until long after the window had closed. In his initial email, he referenced his non-selection and asked if someone in the EEO office "could meet with [him] and please explain this to [him]." *See* Def. Ex. at 45. In a later email, Kim flagged the 45-day deadline for Spence and asked if he wished to schedule an intake interview, making clear that Spence had not formally begun the process. *See id.* at 41–42.[4] Spence did not respond. *Id.* While a Rule 12(b)(6) motion requires the Court to make factual inferences in favor of the nonmoving party, it does not require the Court to accept mere labels and conclusions. *See Twombly*, 550 U.S. at 555. Spence has not plead facts to show that he had an intent to begin the EEO complaint process until February 2019, well after the closure of the 45-day window, when he "reinitiated contact" with the EEO office. Compl. ¶ 33. Thus, his attempt to exhaust his administrative remedies was untimely.[5]

[4] Spence does not dispute the content of these emails nor contest that Kim discussed the 45-day deadline with him. *See* ECF No. 12-1 ¶ 31. Because Spence referenced his communication with the EEO office in his complaint, *see* Compl. ¶ 27-28, and the existence of that contact is "central to plaintiff's claim," see *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C.1999), the Court may consider these documents, which are attached to the motion to dismiss. *See also* Charles Allen Wright et al., 5C Federal Practice and Procedure § 1366 n.34 (3d ed. 2010) ("On a motion to dismiss for failure to state a claim, a defendant may submit an indisputably authentic copy of a document referred to in the complaint and central to the plaintiff's claim even though the plaintiff did not incorporate the document by reference or attach it to the complaint.").

[5] Courts sometime assess an employee's intent to begin the EEO process by her level of engagement with the EEO office. *See Moss v. Perry*, E.E.O.C. DOC 01962472, 1997 WL 91106, at *2 (Feb. 24, 1997) (finding intent where "appellant did not simply send the letter and do nothing. Rather, she actively pursued her complaint, as evidenced by her correspondence to EEO officials over the next several months."). Unlike the plaintiff in *Moss*, Spencer ceased communication with the EEO Office for nearly a year and did not stay in contact about his complaint. Instead, after his initial outreach, Spence failed to respond to emails from an EEO official who tried to engage him in the formal complaint process. Similarly, Spence's notification that he wished to pursue his FOIA request before filing a complaint does not support his assertion that he continued to engage in the administrative process. *See Snyder v. Dept. of Defense*, E.E.O.C. DOC 05901061, 1990 WL 1113251, at *2 (Nov. 1, 1990) (dismissing claims as untimely after EEO warned of applicable time limits and the plaintiff decided to pursue

Nonetheless, the D.C. Circuit was clear in *Doak* that "[t]he deadline for contacting an EEO Counselor is not jurisdictional." *Doak*, 798 F.3d at 1104. A claim unexhausted because of failure to meet regulatory deadlines is instead subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Horvath v. Dodaro*, 160 F. Supp. 3d 32, 49 (D.D.C. 2015). The Rehabilitation Act's "time limits function like statutes of limitations, and thus are subject to equitable tolling, estoppel, and waiver." *Doak*, 798 F.3d at 1104 (cleaned up).

Thus, Spence can avoid dismissal of this claim if "he qualifies for equitable relief from the deadline by demonstrating good cause for the procedural failure." *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017). Defendant argues that equitable remedies are unavailable here. But this argument misreads *Doak*, which clearly states that while such remedies are unavailable when a failure to exhaust implicates jurisdiction, they *are* available where there is only a misstep in regulation-prescribed procedure. 798 F.3d at 1104. Thus, the 45-day limit is subject to extension if a plaintiff can show he "was not notified of the time limits," "did not know and reasonably should not [know] that the discriminatory matter . . . occurred," or "that despite due diligence he . . . was prevented by circumstances beyond his . . . control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2). Such extensions should be granted "only in extraordinary and carefully circumscribed instances." *McCants v. Glickman*, 180 F. Supp. 2d 35, 40 (D.D.C. 2001). Spence bears the burden of showing equitable grounds for failing to meet the 45-day limit. *Id.*

---

another avenue of relief despite being warned that a future complaint may be untimely). Similarly, the EEO Office warned Spence of the 45-day time window, and he abandoned the EEO process for nearly a year while he pursued another channel of inquiry. Compl. ¶¶ 27–33; Def. Ex. at 7.

Spence asserts that he is entitled to such relief because the Secret Service did not formally tell him the reason for his non-selection until May 2019. But a plaintiff need not wait until he discovers facts that support his discrimination claim to engage in counseling and file an EEO complaint. *McCants*, 180 F. Supp. 2d at 40. Spence's suit should be dismissed as untimely if he "suspected a discriminatory motive for the action much earlier" even if he "did not learn the full facts supporting his claim until shortly before he filed his charge." *Id.* But Spence's allegations in this case and during his belated EEO process make clear that he suspected his disability was the reason for his non-selection when he first contacted the EEO office on February 13, 2018. For example, he concedes that his initial contact with the EEO was related to the January 10, 2018, non-selection. Compl. ¶ 27 ("Spence first contacted the USSS EEO office . . . after receiving USSS's January 10, 2018, notice of disqualification."). And it seems apparent that he contemplated filing a formal complaint at that time. *Id.* ¶ 28 (Kim allegedly "informed Spence that he could not file a complaint because he had a received only a general disqualification letter"). That he chose not to do so cannot provide the basis for equitable tolling. *McCants*, 180 F. Supp. 2d at 42 ("By waiting until he learned this information, Mr. McCants put the USDA in the very position that the time limitations are intended to avoid—that of having to defend against a stale claim.").

Spence also alleges that Kim discouraged him from pursuing his EEO complaint during their February 22, 2018 phone call, and therefore, Defendants should be equitably estopped from arguing that he failed to administratively exhaust. Opp'n at 27. Spence alleges that on the February 22, 2018 phone call, Kim told him "he could not file a complaint because he had received only a general disqualification letter and, as a result needed to confirm USSS's specific reason for disqualifying him." Compl. ¶ 28; Opp'n at 27. A plaintiff may invoke equitable

estoppel when the defendant "has taken active steps to prevent the plaintiff from litigating in time." *Hall v. Dept. of Commerce*, No. 16-1619, 2018 WL 2002483, at *4 (D.D.C. Apr. 30, 2018). But the problem for Spence is that courts have "routinely found that a government employee's erroneous advice cannot alone give rise to an equitable estoppel claim." *Id.* (citing cases).

For these reasons, the Court will dismiss Count III for failure to state a claim on which relief can be granted because Spence failed to exhaust his administrative remedies.

**2. Count IV (Disparate Impact)**

Spence also claims that "hearing requirements for Physical Security Specialists, if true, disparately impact employees and applicants with disabilities" in violation of the Rehabilitation Act. Compl. ¶ 81. Defendant first argues that Spence failed to raise this disparate-impact claim in his EEO complaint. As "failure to provide notice of a particular claim is no different—as far as that claim goes—than a wholesale failure to file," Defendant moves to dismiss the claim under Rule 12(b)(1) for lack of subject-matter jurisdiction. *McIver v. Mattis*, 318 F. Supp. 3d 245, 251 (D.D.C. 2018)

A court's authority only extends to claims that are "contained in the plaintiff's administrative complaint or claims 'like or reasonably related to' those claims in the administrative complaint." *Hudson v. Children's Nat. Med. Ctr.*, 645 F. Supp. 2d 1, 3 (D.D.C. 2009) (quoting *Park v. Howard Univ*., 71 F.3d 904, 907 (D.C. Cir. 1995). These requirements give "the charged party notice of the claim" and "narrow[] the issues for prompt adjudication and decision." *Park*, 71 F.3d at 907.

Spence did not raise a disparate-impact claim under the Rehabilitation Act in his EEO complaint. He alleged that "the US Secret Service offices of Human Resources (HUM), Health and Safety (SAF) have discriminated against me by denying my transfer to the Technical

Security Division due to hearing loss." Def. Ex. at 28. This is a disparate-treatment claim that focuses on discrimination against Spence. Moreover, when Spence later amended his complaint and added claims, he did not add a disparate impact claim for discrimination against others. See *id.* at 20–21.

Acknowledging that he never alleged disparate-impact claims during the administrative process, Spence argues that his claim here is related to the allegations raised in his EEO complaint and therefore was exhausted all the same. Exhausted "claims must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Park*, 71 F.3d at 907. Spence's EEO complaint identifies a Secret Service employment policy related to hearing requirements for the Physical Security Specialist position and alleges that the policy was responsible for him not getting the job. Def. Ex. at 28–29. The Court finds that is enough to have put the Secret Service on notice to investigate the policy. *Ramseur v. Perez*, 962 F. Supp. 2d 21, 27 (D.D.C. 2013). Thus, because Spence's Rehabilitation Act disparate impact claim is "like or reasonably related to" those advanced in his EEO complaint, it has been exhausted, and the Court holds that it has subject-matter jurisdiction over it.

But subject-matter jurisdiction is not enough to save this claim, as it still suffers from the same timeliness problem as Spence's disparate-treatment claim. Spence did not start the EEO process until long past the 45-day deadline, and he has not shown that equitable remedies should toll the deadline. Thus, the Court will also dismiss Count IV for failure to state a claim because Spence failed to exhaust his administrative remedies.

**B. Age Discrimination in Employment Act Claims**

Along with his disability discrimination claims, Spence brings claims for both disparate treatment and for disparate impact under the Age Discrimination in Employment Act. He alleges

that the Secret Service discriminated against him "when it denied him the position of Physical Security Specialist because of his hearing loss which is consistent with individuals over the age of forty." Compl. ¶ 54. He also alleges that the hearing requirements for Physical Security Specialists disparately impact those over 40, in violation of the ADEA. *Id.* ¶ 63.

**1. Count I (Disparate Treatment)**

For the same reasons the Court dismissed Spence's disparate treatment claim under the Rehabilitation Act, it must also dismiss his disparate treatment claim under the ADEA. Spence began the EEO process after the regulatory deadline, and he has not shown that equitable remedies should extend that deadline. Thus, the Court will dismiss Count I for failure to state a claim on which relief can be granted because Spence failed to exhaust his administrative remedies.

**2. Count II (Disparate Impact)**

Defendant argues that Spence's disparate-impact claim under the ADEA must be dismissed for lack of subject matter jurisdiction because it is not authorized under that statute. The ADEA subjects all employers to disparate-treatment liability, *see Aliotta v. Bair*, 614 F.3d 556, 561 (D.C. Cir. 2010), and the ADEA authorizes disparate impact claims against non-federal employers, *see Smith v. City of Jackson*, 544 U.S. 228, 239 (2005). But it remains unsettled whether the ADEA waives sovereign immunity and authorizes disparate-impact claims *against the federal government*. Neither the Supreme Court nor the D.C. Circuit have addressed this question. But several judges in this District have declined to recognize such claims. *See Anderson v. Duncan*, 20 F. Supp. 3d 42, 62–64 (D.D.C. 2013); *Allard v. Holder*, 840 F. Supp. 2d 269, 278–81 (D.D.C. 2012); *Am. Fed'n of Gov't Emps. TSA Local 1 v. Hawley*, 481 F. Supp. 2d 72, 91–92 (D.D.C. 2006); *Silver v. Leavitt*, Civ. No. 05-0968, 2006 WL 626928, at *13 (D.D.C. Mar. 13, 2006); *Evans v. Atwood*, 38 F. Supp. 2d 25, 28–30 (D.D.C. 1999). *But see Breen v.*

*Peters*, 474 F. Supp. 2d 1, 6–7 (D.D.C. 2007) (finding the federal-employer section includes both disparate treatment and impact claims "as both methods of proof seek redress for illegal discrimination").

These courts concluded that the text and structure of the ADEA do not authorize such claims. While private employers and state and local governments can be held liable through one statutory authorization—29 U.S.C. § 623(a)(2)—a separate authorization governs suits against the federal government. 29 U.S.C. § 633a. The former provides that "[i]t shall be unlawful for an employer . . . to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." § 623(a)(2). In contrast, the federal-government discrimination ban—added through a 1974 amendment "patterned directly after the federal-sector discrimination ban in Title VII of the Civil Rights Act," *Anderson v. Duncan*, 20 F. Supp. 3d 42, 60 (D.D.C. 2013) (cleaned up) (*citing Gomez–Perez v. Potter*, 553 U.S. 474, 487 (2008))—merely provides that "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on age," 29 U.S.C. § 633a. And in *City of Jackson*, the Supreme Court's determination that the ADEA authorizes disparate-impact claims against *non-federal* employers appears to have turned on this distinction. As the Court explained, "[n]either [Title VII] nor the comparable language in the ADEA simply prohibits actions that 'limit, segregate, or classify' persons; rather the language prohibits such actions that 'deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's' race or age." 544 U.S. at 235 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991 (1988) and quoting Title VII). The text of the federal government discrimination ban, at issue here, does not include this expansive language. *See Allard*, 840 F.

Supp. 2d at 279–80 ("The federal section's language is simple and plain, and neither expressly nor impliedly authorizes disparate-impact claims . . . when, and if, the Congress chooses to do so expressly, such claims will be cognizable by this Court."); *Evans*, 38 F. Supp. 2d at 30 ("The text of the ADEA does not specifically provide for disparate impact claims, and (unlike Title VII) Congress has not sought to amend the statute to include such claims."). For this reason, the Court also holds that such disparate impact claims are not cognizable under the ADEA, and it will dismiss Count II for lack of subject-matter jurisdiction. The Court also notes that, even if it had subject-matter jurisdiction over Count II, it would dismiss it for failure to state a claim because, as with Counts I, II, and IV, Spence did not exhaust his administrative remedies.

## IV. Conclusion

For all these reasons, the Court will grant Defendant's Motion to Dismiss, ECF No. 10. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 15, 2020